UNITED STATES v. SEVEN HUNDRED AND SEVENTY-NINE CASES OF MOLASSES (two cases).

(Circuit Court of Appeals, Eighth Circuit. November 5, 1909.)

Nos. 3,030, 3,024.

1. APPEAL AND ERROR (§ 5*)—PROCEEDINGS FOR FORFEITURE UNDER FOOD AND DRUGS ACT—MODE OF REVIEW.

A proceeding by the United States under Food and Drugs Act June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193), for the condemnation and forfeiture of an article alleged to be adulterated or misbranded, in which either party is given the right to demand a trial by jury of any issue of fact, where such trial is demanded and had, is reviewable only on writ of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 8–21; Dec. Dig. § 5.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. FOOD (§ 7*)—FOOD AND DRUGS ACT—ADULTERATION AND MISBRANDING.
    An article of food, put up and sold in cases bearing principal labels, describing the contents as a particular brand of molasses, but plainly stating in three separate places that the product is a compound of molasses and corn syrup, and also containing all the other information required by Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), and the regulations thereunder, and which article is in fact a compound of molasses and commercial glucose, is not adulterated nor misbranded, within the meaning of such act; it being shown that it contains nothing deleterious to health, and that under the rulings of the department it is permissible to describe commercial glucose on labels or brands as made from corn syrup.
    [Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 7.*]

In Error to and Appeal from the District Court of United States for the Eastern District of Arkansas.

Proceeding by the United States for the forfeiture of seven hundred and seventy-nine cases of molasses; C. E. Coe, claimant. Judgment for claimant on directed verdict, and the United States brings error and appeals. Affirmed.

William G. Whipple, U. S. Atty., and Powell Clayton, Asst. U. S. Atty.

R. G. Brown (H. B. Anderson, on the brief), for defendant in error and appellee.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge. This is a libel of condemnation arising under the provisions of the pure food and drug law, enacted by Congress June 30, 1906 (34 Stat. 768, c. 3915 [U. S. Comp. St. Supp. 1909, p. 1188]), and the regulations of the Secretaries promulgated October 20, 1906, in pursuance of power conferred on them by section 3 of the act. The facts are:

One C. E. Coe, a merchant of the city of Memphis, Tenn., at various dates between March 18 and August 1, 1908, sold and shipped the 779 cases of molasses in controversy to certain wholesale jobbing houses in the city of Little Rock, Ark. Thereafter, on August 19th, the district attorney for the district of Arkansas filed his libel of condemnation, in which it was charged the molasses was both adulterated and misbranded in violation of the provisions of the act. A writ of seizure was issued and executed by the marshal, seizing, as shown by his return, 685 cases of the molasses in question. Of the cases seized, as shown by his return, 464 were what is labeled "sugar glen" molasses, and 221 cases as "burro" molasses. Thereafter on September 21, 1908, by leave of court, an amended libel of condemnation was filed, in which it was charged the molasses contained in the cases was adulterated by the use of commercial glucose, mixed and packed with the molasses to such extent as to injuriously affect the quality and strength in violation of the law; and it was further charged, in substance, the cases were so labeled and misbranded as to convey the impression the contents of the cases were pure sugar house molasses, whereas, in truth, they were a compound of sugar molasses and corn syrup. Thereafter Coe filed his

affidavit as claimant of the molasses and answered, setting up his guaranty to the purchasers under the terms of the act, denied the charges of adulteration and misbranding, attached as exhibit to his answer a copy of the label of each brand of molasses sold and delivered by him, and demanded a trial by jury, as provided by section 10 of the act, and gave a bond as provided in the act to secure possession of the molasses. A trial by jury was had, at which, by direction of the court, the jury returned a verdict in favor of the claimant, on which a judgment was entered in his favor. From this judgment the government, being uncertain as to its rights, prosecutes its appeal in case No. 3,024 and also prosecutes error in case No. 3,030.

From the statement made it would seem quite plain the proceedings on the trial cannot be re-examined by this court on the appeal taken. Section 10 of the act, among other matters, provides as follows:

"That any article of food, drug or liquor that is adulterated or misbranded within the meaning of this act, and is being transported from one state, territory, district or insular possession to another for sale, or having been transported, remains unloaded, unsold or in original unbroken packages, or if it be sold or offered for sale in the District of Columbia or the territories, or insular possessions of the United States, or if it be imported from a foreign country for sale, or if it is intended for export to a foreign country, shall be liable to be proceeded against in any District Court of the United States within the district where the same is found, and seized for confiscation by a process of libel for condemnation. * * * The proceedings of such libel shall conform, as near as may be, to the proceedings in admiralty, except that either party may demand trial by jury of any issue of fact joined in any such case, and all such proceedings shall be at the suit of and in the name of the United States."

The right to trial by jury granted by this act on demand of either party is absolute, and means a trial by jury according to the established practice in courts of common law. Elliott v. Toeppner, 187 U. S. 327, 23 Sup. Ct. 133, 47 L. Ed. 200; Insurance Company v. Comstock, 16 Wall. 258, 21 L. Ed. 493; Parsons v. Bedford, 3 Pet. 433, 7 L. Ed. 732; Bower v. Holzworth et al., 138 Fed. 28, 70 C. C. A. 396; Duncan v. Landis, 106 Fed. 839, 45 C. C. A. 666. By article 7 of the Constitution it is provided:

"No fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law."

Mr. Justice Clifford, delivering the opinion of the court in Insurance Company v. Comstock, supra, in commenting on this provision of the Constitution, said:

"Two modes only were known to the common law to re-examine such facts, to wit: The granting of a new trial by the court where the issue was tried, or to which the record was returnable; or, secondly, by the award of a venire facias de novo by an appellate court for some error of law which intervened in the proceedings. All suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights, are embraced in that provision. It means not merely suits which the common law recognized among its settled proceedings, but all suits in which legal rights are to be determined in that mode, in contradistinction to equitable rights and to cases of admiralty and maritime jurisdiction, and it does not refer to the particular form of procedure which may be adopted."

As a jury trial was demanded by the claimant in this case, and as such trial was had, the appeal taken in case No. 3,024 must be dis-

missed, because such method is inappropriate to review the proceedings had. It is so ordered.

At the trial the charge of adulteration was abandoned by the government, and it relied solely and alone on the charge of misbranding. As has been seen, at the conclusion of the evidence the court charged the jury neither of the labels under which the cases of molasses were sold and shipped from Memphis to Little Rock was misleading, nor constituted a misbranding, as that term is employed in the act, nor in regulation 17 promulgated by the Secretaries under authority of the act. This action of the court constitutes the sole ground of error relied upon to work a reversal of the judgment rendered in the case.

The only evidence adduced on the trial was that of the marshal who executed the writ of seizure and that of Geo. B. Spencer, a government chemist from the Department of Agriculture. The marshal testified the cases of molasses seized by him bore labels identical with those attached to and made part of the answer of claimant, which labels were offered and received in evidence at the trial, as Exhibits A and B, and are in the form annexed.

The witness Spencer testified he made a chemical analysis of the brands of molasses seized in this case; that the sugar glen brand contained 30 per cent. and the burro brand 40 per cent. of commercial glucose; that pure molasses contains no commercial glucose, but does contain natural glucose; that neither natural nor commercial glucose is injurious or deleterious to health; that a large number of syrups on the market contain as high as 80 per cent. or 90 per cent. commercial glucose; that according to the practice and rulings of the Bureau of Chemistry of the Department of Agriculture the labeling or branding of commercial glucose as "made from corn syrup" is permissible.

The provisions of the act prescribing what shall constitute a misbranding, within its meaning as applied to food products, are as follows:

"If it be labeled or branded so as to deceive or mislead the purchaser. * * * If the package containing it or its label shall bear any statement, design or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular; provided that an article of food which does not contain any added poisonous or deleterious ingredients shall not be deemed to be adulterated or misbranded in the following cases:

"First. In the case of mixtures or compounds which may be now or from time to time hereafter known as articles of food, under their own distinctive names, and not an imitation of or offered for sale under the distinctive name of another article, if the name be accompanied on the same label or brand with a statement of the place where said article has been manufactured or produced.

"Second. In the case of articles labeled, branded or tagged so as to plainly indicate that they are compounds, imitations or blends, and the word 'compound,' 'imitation' or 'blend,' as the case may be, is plainly stated on the package in which it is offered for sale."

Regulation 17 of the Secretaries (which has the effect of law), on the subject of misbranding, in so far as here thought applicable, provides:

## SUGAR HOUSE MOLASSES

COMPOUND
MOLASSES AND CORN SYRUP

OPEN KETTLE

### SUGAR GLEN MOLASSES
AND
CORN SYRUP

IS COMPOSED OF THE FOLLOWING
INGREDIENTS ONLY

COMPOUND
SUGAR HOUSE MOLASSES AND CORN SYRUP

C. E. COE

CONTAINS SULPHUR DIOXIDE
GUARANTEED UNDER THE FOOD
AND DRUGS
U. S. SERIAL

IT HAS A
DELIGHTFUL
FLAVOR
AND IS A SWEET,
WHOLESOME
TABLE DELICACY.
CANNED
ESPECIALLY
FOR
FAMILY USE

## BURRO
BRAND

RIBBON CANE

Compound
Molasses
and
Corn Syrup

## SUGAR HOUSE MOLASSES

### Burro Brand

MOLASSES AND CORN SYRUP
is composed of the following
ingredients only

COMPOUND
Louisiana Molasses and
Corn Syrup

Refined by C. E. COE MEMPHIS,
TENN

GUARANTEED UNDER THE FOOD AND DRUGS
ACT, JUNE 30, 1906. UNITED STATES
SERIAL NUMBER 13905.

"(a) The term 'label' applies to any printed, pictorial, or other matter upon or attached to any package of a food or drug product, or any container thereof subject to the provisions of this act.

"(b) The principal label shall consist, first, of all information which the food and drugs act of June 30, 1906, specifically requires, to wit, the name of the place of manufacture in the case of food compounds or mixtures sold under a distinctive name; statements which show that the articles are compounds, mixtures, or blends; the words 'compound,' 'mixture,' or 'blend,' and words designating substances or their derivatives and proportions required to be named in the case of foods and drugs. All this information shall appear upon the principal label, and should have no intervening descriptive or explanatory reading matter. Second, if the name of the manufacturer and place of manufacture are given, they should also appear upon the principal label. Third, preferably upon the principal label, in conjunction with the name of the substance, such phrases as 'artificially colored,' 'colored with sulphate of copper,' or any other such descriptive phrases necessary to be announced should be conspicuously displayed. Fourth, elsewhere upon the principal label other matter may appear in the discretion of the manufacturer. If the contents are stated in terms of weight or measure, such statement should appear upon the principal label and must be couched in plain terms, as required by regulation 29.

"(c) If the principal label is in a foreign language, all information required by law and such other information as indicated above in (b) shall appear upon it in English. Besides the principal label in the language of the country of production, there may be also one or more other labels, if desired, in other languages, but none of them more prominent than the principal label, and these other labels must bear the information required by law, but not necessarily in English. The size of the type used to declare the information required by the act shall not be smaller than 8-point (brevier) capitals: Provided, in case the size of the package will not permit the use of 8-point type, the size of the type may be reduced proportionately.

"(d) Descriptive matter upon the label shall be free from any statement, design, or device regarding the article or the ingredients or substances contained therein, or quality thereof, or place of origin, which is false or misleading in any particular. The term 'design' or 'device' applies to pictorial matter of every description, and to abbreviations, characters, or signs for weights, measures, or names of substances."

If the labels in question be now compared with the provisions of the law above quoted, we find the first panel of each, and that contended by the claimant to be the principal label, to contain, first, the name of the substance or product; second, the place where manufactured or canned; third, words showing the article to be a compound; fourth, the words "compound and ingredients"; fifth, the name of the manufacturer or canner of the product; sixth, that it contains sulphur dioxide; seventh, that it is guaranteed under the pure food act, serial No. 13,905, all as required by clause "b" of regulation 17 above quoted. From a further examination of the labels, it is found each in three places distinctly states the product to be a compound of molasses and corn syrup.

As shown from the evidence, this compound contains no substance deleterious or injurious to the health; and, as it further appears from the evidence, under the practice of the department, commercial glucose may be properly labeled and sold under the name of "corn syrup," we are of the opinion there is nothing in the manner in which the cases of molasses involved in this controversy were labeled that is false or untrue, or which would tend to mislead or deceive a purchaser of ordi-

nary prudence, and there is no evidence found in the record tending to show any one was so deceived or misled by the labels employed.

The authorities relied upon by the government to make out the charge of false branding, as shown by an examination, are cases in which it was determined the labels contained false statements as to the contents of the receptacle labeled. Such cases, for the reasons given, are not applicable to the facts in the case at bar.

The direction of the court to return a verdict in favor of the claimant was right, and must be affirmed.

It is so ordered.