UNITED STATES v. 300 CANS OF FROZEN EGGS.

(Circuit Court of Appeals, Second Circuit. June 6, 1911.)

No. 291.

1. **Food** (§ 24*)—Decomposed Food—Confiscation—Statutes—Jurisdiction.
    Under Food & Drugs Act of June 30, 1906, c. 3915, § 10, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193), providing for the forfeiture and destruction of food transported in interstate commerce for sale, or having been transported, remains unloaded, unsold or in original unbroken packages, where a libel alleged that certain frozen eggs had been transported in interstate commerce and were, at the time of the service of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the libel, in whole or in part filthy, putrid or decomposed, and remained unsold in original unbroken packages in a warehouse in New York City, the libel was not fatally defective for failure to charge that the eggs had been transported for sale.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 17; Dec. Dig. § 24.*

What constitutes a violation of pure food regulations, see note to Brina v. United States, 105 C. C. A. 559.]

2. FOOD (§ 24*)—CONDEMNATION—FORFEITURE—LIBEL.

Where a libel against frozen eggs described them as articles of food, it was not objectionable for failure to negative that the eggs were intended for other than good uses.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

3. FOOD (§ 24*)—INTERSTATE COMMERCE—CONSIGNMENT BY SHIPPER TO ITSELF.

The fact that frozen eggs, against which a libel was instituted, had been shipped from one state to another, consigned by the shipper to itself, did not indicate that they had not been transported in interstate commerce.

[Ed. Note.—For other cases, see Food, Dec. Dig. § 24.*]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the United States against 300 cans of frozen eggs claimed by the European Egg Company. From a judgment sustaining exceptions to the libel, the government appeals. Reversed.

Henry A. Wise, U. S. Atty. (J. N. Boyle, Asst. U. S. Atty., of counsel), for the United States.

Olcott, Gruber, Bonynge & McManus (S. C. Nussbaum, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a libel filed by the United States for the condemnation of 300 cans of frozen eggs under section 10 of the food and drugs act of June 30, 1906, c. 3915, 34 Stat. 771 (U. S. Comp. St. Supp. 1909, p. 1193). The material allegations are as follows:

"(1) This libel is filed by the United States of America in its own right, and prays seizure for condemnation of certain articles of food as hereinafter particularly set forth in accordance with the food and drugs act of Congress, approved June 30, 1906, 34 Stat. 768.

"(2) Your libelant represents to the court, that in the city, county and Southern district of New York, and within the jurisdiction of this honorable court, there are owned by the European Egg Company and stored at the Harrison Street Cold Storage Warehouse, No. 7 Harrison street, borough of Manhattan, city of New York, 300 cans, each containing an article of food, to wit, frozen eggs, each weighing approximately 28 pounds.

"(3) Your libelant further represents that said articles of food so as aforesaid particularly described are illegally held within the jurisdiction of this honorable court, and are liable to condemnation and confiscation, as provided in the said act of Congress:

"In that each of the said 300 cans contains an article of food, to wit, frozen eggs, which being animal substance, is in whole or in part filthy, putrid, and decomposed, contrary to the provisions of subdivision 6 of section 7 of the act of June 30, 1906.

"Your libelant further represents that the said articles were shipped from South Omaha, Nebraska, by the European Egg Company, on or about the 3d

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

day of October, 1910, via the Chicago, Burlington & Quincy Railroad Company, the Chicago, Indiana & Southern Railroad Company, and the Erie Despatch, and were thereafter transported and delivered to said European Egg Company at the Harrison Street Cold Storage Warehouse, No. 7 Harrison street, at the borough of Manhattan, in the city of New York, on or about the 8th day of October, 1910, and that the said articles remain unsold in their original unbroken packages in the said city, county and state of New York and in the Southern district of New York."

The European Egg Company, claimant, filed exceptions to the libel as follows:

"First Exception. That this honorable court has no jurisdiction of the matters contained in said libel, the same not being matters that come under the food and drugs act of Congress, approved June 30, 1906.

"Second Exception. For that the said libelant has not well and sufficiently set forth evidence to warrant the issuance of said libel, in so far as it does not state that said frozen eggs were seized while being used in interstate commerce."

The District Judge sustained the exceptions to the libel, saying:

"I think that Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, covers this case if the eggs had been alleged to have been shipped 'for sale.' The statute (section 10) says 'transported * * * for sale,' and the libel does not follow the statute, though it does say that they remain unsold. That is hardly enough. It is not necessary to consider the power of Congress if the transportation was not for sale, but for aught that appears these eggs were not to be sold either as eggs or in any other form. Therefore the libelant must amend. Exceptions sustained."

The United States having failed to amend the libel, it was dismissed and this appeal taken from the decree.

We think the learned judge erred in treating the charge in the libel as against the cases while being transported. The second exception seems to proceed on this ground. The act expressly describes the guilty goods in such a case as "being transported * * * for sale." But the charge was against the goods in the original packages after transportation was over. The applicable words of the act are "or having been transported remains unloaded, unsold or in original unbroken packages." The allegations as to the carriage of the goods between Nebraska and New York were made for the purpose of showing that they were a subject of interstate commerce. It would be a very natural construction to hold that the words "for sale" describing the goods seized in course of transportation are to be carried forward to the goods in the next category seized after transportation is over as the claimant contends under the first exception. Indeed, this was the construction adopted by Sater, J., in United States v. 46 Bags of Sugar (D. C.) 183 Fed. 642. But the decision of the Supreme Court in Hipolite Egg Co., Claimant of 500 Cases of Preserved Eggs, v. United States, decided March 13, 1911, makes this construction impossible. The opinion of Mr. Justice McKenna and the transcript of record in that case shows that Thomas & Clarke (for whom the Hipolite Egg Company was substituted as claimant) were the owners of 370 cases of "preserved whole eggs" in a cold storage warehouse at St. Louis, Mo., which they had previously bought from the Hipolite Egg Company of that city; that Thomas & Clarke shipped

189 F.—23

50 cases of these eggs from St. Louis to themselves at Peoria, Ill., to be used in their business as manufacturing bakers which were the cans seized in the original packages on their premises after the transportation was over. The charge in the libel was:

"That the said fifty cans, more or less, containing said food product and so adulterated as above set forth, have been transported from the city of St. Louis, in the state of Missouri, to the city of Peoria, in the state of Illinois, in the division and district aforesaid, and remain unsold in this district in the original and unbroken package, in the possession of Thomas & Clarke in the city of Peoria, in violation of the said act approved June 30, 1906."

Although the District Judge found that the eggs were not transported for sale, but for use by the consignees in their business, he entered a decree of condemnation which the Supreme Court confirmed. The case is precisely similar to the one under consideration. Mr. Justice McKenna states the claimant's contention as follows:

"(1) Section 10 of the food and drugs act does not apply to an article of food which has not been shipped for sale but which has been shipped solely for use as raw material in the manufacture of some other product."

He then goes on to say after considering Judge Sater's opinion, supra:

"The object of the law is to keep adulterated articles out of the channels of interstate commerce, or, if they enter such commerce, to condemn them while being transported or when they have reached thir destination, provided they remain unloaded, unsold or in original unbroken packages. These situations are clearly separate, and we cannot unite or qualify them by the purpose of the owner to be a sale. It, indeed, may be asked in what manner a sale? The question suggests that we might accept the condition, and yet the instances of this record be within the statute. All articles, compound or single, not intended for consumption by the producer, are designed for sale, and, because they are, it is the concern of the law to have them pure. It is, however, insisted that 'the proceedings in personam authorized by the law was intended to, and no doubt is, capable of giving full force and effect to the law'; and, further, that a producer in a state is not interested in an article shipped from another state which is not intended to be sold or offered for consumption until it is manufactured into something else. The argument is peculiar. It is certainly to the interest of a producer or consumer that the article which he receives, no matter whence it come, shall be pure, and the law seeks to secure that interest, not only through personal penalties but through the condemnation of the article if impure. There is nothing inconsistent in the remedies, now are they dependent. The Three Friends, 166 U. S. 1, 49, 17 Sup. Ct. 195, 41 L. Ed. 897. The first contention of the Egg Company is, therefore, untenable."

The District Judge dismissed the libel because it did not describe the goods as transported "for sale," whereas this exception should have been overruled. Willard, J., has come to conclusions similar to ours in United States v. Two Barrels of Desiccated Eggs (D. C.) 185 Fed. 302, 307.

[2] It was further suggested at the hearing that these eggs might have been intended for other uses than food uses and that the libel should have alleged that they were to be used for food purposes. It does describe the goods as articles of food and this is quite sufficient to withstand these general exceptions.

[3] Finally, it is said that as the Egg Company shipped to itself, without sale, the packages were never a part of interstate commerce. We know of no authority for such a proposition. Certainly the case of Hipolite Egg Company is not such.

The decree is reversed.