## CORN PRODUCTS REFINING CO. v. WEIGLE.

(District Court, W. D. Wisconsin. March 30, 1915.)

### No. 34-E.

1. COMMERCE ⬅➡8—INTERSTATE COMMERCE—VALIDITY OF STATE LAWS—"MISBRANDED."

St. Wis. 1913, § 4601—1a, providing that no person shall sell any maple syrup, sugar cane syrup, etc., mixed with glucose, unless distinctly branded or labeled, so as to show the percentage of glucose and the percentage of maple syrup, sugar cane syrup, etc., such names and percentages not to be mingled with other reading matter, is invalid as applied to sales in interstate commerce because in direct conflict with Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (Comp. St. 1913, § 8718), prohibiting the introduction into any state from any other state of any article of food which is adulterated or misbranded, section 8 (Comp. St. 1913, § 8724), providing that an article shall be deemed "misbranded" if the package containing it or its label shall bear any statement regarding its ingredients which shall be false or misleading, and section 10 (Comp. St. 1913, § 8726), providing that any article of food adulterated or misbranded, being transferred in interstate commerce or having been so transferred, while it remains unloaded, unsold, or in original unbroken packages shall be liable to confiscation, under which it has been held by the federal authorities and the federal courts that a mixture of refiners' syrup or sugar syrup with the article known as glucose or corn syrup, is not misbranded when described on the label as consisting of corn syrup

and sugar syrup, and that the state cannot forbid sales of such mixture bearing such label.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.

For other definitions, see Words and Phrases, First and Second Series, Misbrand.]

2. STATUTES ☞64—PARTIAL INVALIDITY—EFFECT.

Such act being broad enough to include all sales, whether interstate or internal, and it being the settled rule in Wisconsin to restrain such general language to internal commerce, if to do otherwise would render the statute void, the statute is valid as applied to purely internal commerce.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ☞64.]

In Equity. Suit by the Corn Products Refining Company against George J. Weigle. Decree for complainant.

H. O. Fairchild, of Green Bay, Wis., for complainant.

Walter C. Owen, Atty. Gen. Wis., and John M. Olin, of Madison, Wis., for defendant.

SANBORN, District Judge. This suit was brought in March, 1915, against the present defendant. A former suit in all respects the same was brought in 1913 against John Q. Emery, then the dairy and food commissioner of Wisconsin, to restrain the enforcement of a statute of Wisconsin of 1913, relating to glucose labels, on the ground of its alleged conflict with the federal Constitution. The trial came on in March, 1914, and the argument in January of the present year. Shortly afterward, and before the case had been decided, Mr. Emery was succeeded as dairy and food commissioner by the defendant Weigle. The suit thus having abated, and steps being contemplated to have it revived against the present defendant, the parties became doubtful of the right to revive under the rule of Pullman Co. v. Croom, 231 U. S. 571, 34 Sup. Ct. 182, 58 L. Ed. 375. A new suit was therefore instituted against the present defendant by the filing of a second bill, similar to the first, mutatis mutandis, and put at issue by filing an answer. It was thereupon stipulated that the evidence given in the Emery suit should be the evidence in this, with the same effect as if no succession of officers had occurred.

Complainant was organized in 1906 under the laws of New Jersey, succeeding to the business of the Corn Products Company, which in its turn succeeded to the Glucose Sugar Refining Company, an Illinois corporation, which was engaged in business from 1898 to 1902. These corporations have owned a number of starch and glucose manufacturing plants in different parts of the country during the respective periods of their existence, and have done a large business in producing and marketing starch and glucose, and for a number of years complainant and its immediate predecessor have been marketing large quantities of an article known to the retail trade as corn syrup, under the trade-name of "Karo," a mixture of glucose and refiner's syrup or sugar syrup. For the last few years complainant has had a large sale of corn syrup to the consumer through retail dealers, put up in

cans of 20 pounds, 10 pounds, 5 pounds, and 2 pounds, sold to jobbers in cases containing from 3 to 24 cans each. It marketed in Wisconsin in 1908 110,569 cases, in 1909 124,776 cases, in 1910 104,085 cases, in 1911 129,132 cases, in 1912 162,036 cases, and in 1913 119,529 cases. In addition it sold to jobbers in states adjoining Wisconsin large numbers of cases of cans of corn syrup, and the sales of such jobbers in Wisconsin from 1908 to 1913 amounted to at least 300,000 cases, so that the total sales in Wisconsin from 1908 to 1913 amounted to at least 1,000,000 cases. The gross value of the corn syrup sold by complainant at the present time in Wisconsin is about $200,000 per annum. All such shipments and sales are interstate commerce transactions.

Commensurate sales of these goods, all labeled as corn syrup and refiners' or sugar syrup during the period referred to, have been made in other states, so it is safe to say that the buyers have become familiar with the meaning of the term "corn syrup." All of complainant's business is in the field of interstate commerce. No glucose or corn syrup is produced by any one in Wisconsin.

Two names have been applied to the article in question, "glucose" and "corn syrup," and there has been much controversy over the point in the Department of Agriculture and in Michigan and Wisconsin. The article is derived from the incomplete hydrolysis or breaking down of the starch found in the kernel of ripe Indian corn. Among chemists in the laboratory, and in commercial usage, when sold in bulk to manufacturers of candy, jellies, and similar produce, this article is known as "glucose," but when sold to consumers as an article of food as "corn syrup." It is composed of the following ingredients in varying quantities, but may be stated to contain the following substances and percentages: Dextrine 42, dextrose 34, maltose 4, water 19, ash 1. In Food Circular 19 of the United States Department of Agriculture the term is thus defined:

Glucose, mixing glucose, confectionery glucose, is a thick, syrupy, colorless product, made by incompletely hydrolizing starch, or a starch-containing substance, and deodorizing and evaporating the product. It is one-half as sweet as refiners' syrup, and about two-fifths as sweet as maple syrup or sugar syrup.

The word is derived from the Greek word "glukús" meaning sweet. Although dextrine is a gum, its presence is necessary in glucose in order to keep it in a liquid form. Glucose or corn syrup is a food product mainly valuable as such from its carbohydrates or energy-giving qualities, and is a wholesome article of food.

After the decision in McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, holding the Wisconsin law of 1907 invalid, as interfering with the provisions of the federal act relating to food and drugs, and as burdening interstate commerce, the statute of 1913, which is here in question, was passed by the Wisconsin Legislature. It had been decided in Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182, that since the Food and Drugs Act does not require food labels to disclose ingredients the states may supply this; and an Indiana statute requiring labels for the sale of stock foods to show the percentage of protein and crude fat was held

valid. The Wisconsin statute of 1907 provided that glucose labels must read "Glucose Flavored with Sugar Syrup," etc., and that the packages should bear no other label. At and before the adoption of the law of 1907 complainant had labeled its goods under the Food and Drugs Act as made up of corn syrup and refiners' syrup or sugar syrup;[1] and the Wisconsin law therefore required the removal of such labels. This feature was held to interfere with the federal law making labels within the meaning of the act evidence of branding or misbranding, and making a true label complete protection to the dealer from seizure of his goods or criminal process against him. McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984.

The Wisconsin Legislature was in session when the McDermott decision was made, and the act of 1913 here in question was passed at that session. The federal corn syrup label having been held presumptively good, and beyond the state power to destroy, it was conceived that the state could still compel the use of a glucose label in connection with the corn syrup label, and this was provided for in the following statute:

"No person, by himself, his servant or agent, or as the servant or agent of another, shall sell any maple syrup, sugar-cane syrup, sugar syrup, refiners' syrup, sorghum or molasses, mixed with glucose, unless the same be distinctly branded, tagged, or labeled so as to show plainly the percentage of each of the ingredients composing such mixture, to wit: The percentage of said glucose and the percentage of any said maple syrup, sugar-cane syrup, sugar syrup, refiners' syrup, sorghum syrup, or molasses, as the case may be; the said names and percentages of such ingredients to be in Gothic type, bold-face, not less than one-fourth inch high, and not to be mingled with other reading matter." Wisconsin Stats. 1913, § 4601—1a.

Penal provisions to secure obedience were contained in the sections of the statute immediately following. After the adoption of the law of 1913 complainant changed its label to read "Corn Syrup 85%, Refiner's Syrup 15%."

The validity of section 4601—1a is attacked on three grounds: (1) As a regulation of interstate commerce. (2) As an unreasonable and oppressive exercise of police power. (3) As depriving complainant of its property without due process of law.

[1] 1. *Is the state law a commerce regulation?* Compliance with the Wisconsin statute would require a label in substance as follows: "Corn Syrup 85%, Sugar Syrup 15%. Glucose 85%, Sugar Syrup 15%." It would not be permissible, by force of the concluding sentence of the law, to write the label thus: "Corn Syrup (Glucose) 85%, Sugar Syrup 15%." So we are obliged to deal with a confused, inconsistent, and misleading label, whose practical purpose is difficult to understand. If the statute allowed the label to state that the article contains "85% of glucose or corn syrup," it might be possible to

---

[1] The label complies with Regulation 17 of the Three Secretaries. United States v. Seven Hundred and Seventy-Nine Cases of Molasses, 174 Fed. 329, 98 C. C. A. 197. No question of the validity of this regulation is made. It is also in accordance with Food Inspection Decision 87 of the Three Secretaries, which will be found in 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984.

give it effect; but this would be a most palpable violation of both words and meaning. So the Wisconsin Legislature, unable under the McDermott ruling to utterly destroy the federal label, proposes to discredit it so far as possible, impeach it in part, break its force, and leave it a confused jargon of words and figures, contradictory and misleading. The force of the ruling of the Supreme Court is thus respected in the letter, but greatly weakened in spirit and effect. This seems to be a regulation clearly in derogation of the rights given by the federal law quoted further on.

It is contended that this statute was passed under the authority to require the display of names of ingredients expressly sustained in Savage v. Jones; but it is quite evident, in view of the situation at the time of its passage, that its sole purpose was to establish "glucose" on an equal footing with "corn syrup" on food labels; in other words, to fix what was, in the legislative view, the only proper branding. The product was already branded so as to show ingredients, so the only thing remaining for the state to do was to enforce the correction of such label, being the very duty which Congress had imposed upon the federal courts by criminal and quasi admiralty proceedings. The Wisconsin law is tantamount to a declaration that the name "glucose" on a label is not false or misleading in any particular. Thus the question arises whether the statute as literally read is not an invasion of federal power over interstate commerce, the intrusion of state authority in a field already occupied, and whether it must not be restricted to purely internal commerce in order to be sustained.

Can the purpose of the federal law be accomplished without denying to the state the power to finally decide what shall be a misbranding? Is the repugnance or conflict between the two statutes so great that they cannot possibly be reconciled or stand together? Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182. If so, the Wisconsin law must either be held void as a whole or restricted to purely internal concerns.

To properly appreciate these questions, reference should be made to the provisions of the federal and state statutes, the pertinent provisions of which follow:

"That the introduction into any state or territory or the District of Columbia from any other state or territory or the District of Columbia, or from any foreign country, or shipment to any foreign country of any article of food or drugs which is adulterated or misbranded, within the meaning of this act, is hereby prohibited; and any person who shall ship or deliver for shipment from any state * * * to any other state, * * * or shall receive in any state * * * from any other state and having so received, shall deliver, in original unbroken packages, for pay or otherwise, or offer to deliver to any other person, any such article so adulterated or misbranded * * * shall be guilty of a misdemeanor," subject to fine or imprisonment, or both. Act June 30, 1906, c. 3915, § 2, 34 Stat. 768 (Comp. St. 1913, § 8718).

An article shall be deemed to be misbranded "if the package containing it or its label shall bear any statement, design, or device regarding the ingredients or the substances contained therein, which statement, design, or device shall be false or misleading in any particular." Section 8, subd. 4, 34 Stat. 768 (Comp. St. 1913, § 8724).

"That any article of food, drug, or liquor that is adulterated or misbranded within the meaning of this act," being transported in interstate commerce, or

having been so transported, remains unloaded, unsold or in original unbroken packages, shall be liable to be proceeded against in any District Court of the United States within the district where the same is found, and seized for confiscation by a process of libel for condemnation. Section 10, 34 Stat. 771 (Comp. St. 1913, § 8726).

Comparing these provisions with the Wisconsin law, we have the following:

"Whoever shall * * * neglect or refuse, to do any of the acts or things required by section 4601—1a, * * * or in any way violate" its provisions, shall be guilty of a misdemeanor, and be punished. Section 4601—3a.

"In all prosecutions arising under the provisions of these statutes relating to the manufacture or sale of an adulterated, misbranded or otherwise unlawful article of food, the following definitions and standards for food products shall be the legal definitions and standards, to wit:

"Syrup is the sound product made by purifying and evaporating the juice of a sugar-producing plant without removing any of the sugar." Section 4601—4a.

These laws cover the same precise field. Both deal with the rights, duties, and liabilities growing out of food brands. "The two statutes operating upon the same subject-matter prescribe different rules." Gulf, Colorado, etc., R. Co. v. Hefley, 158 U. S. 98, 102, 15 Sup. Ct. 802, 39 L. Ed. 910. There seems to be direct, immediate, and irreconcilable conflict.

In this field a common sovereignty or co-dominion exists, under which the state may compel the disclosure of ingredients, or exert any other power not already exercised by Congress. The latter having added sanctions for misbranding and adulteration, those prescribed by the former become simply inapplicable to complainant, although in full force as to commerce wholly within the state, probably also to dealers using trade marks or names.

While the national law does not compel the disclosure on a label of the ingredients of the article, yet it is obvious that if such disclosure is actually made, either by voluntary act of the seller under Regulation 17 or pursuant to local law, it must be truthful, and that the question whether it is false or misleading in any particular is one of federal law alone. Any other conclusion might leave the dealer in the position of the carrier in Southern Railway v. Reid, 222 U. S. 424, 442, 32 Sup. Ct. 140, 56 L. Ed. 257, of whom it was said that, if he obey the state law he incurs the penalties of the federal law; if he obey the federal law, he incurs the penalties of the state law. The Wisconsin Legislature has undertaken to settle the question of the true and rightful name of "Karo" by enacting that the word "glucose" shall appear on the label. In other words, it has decided the question of misbranding, which the federal law says shall be settled by the federal courts. Complainant cannot serve two masters, each having plenary power. The assumed state authority must therefore yield.

The contention for the state appeals to the ethical principle that the consumer should be allowed to know that the article purchased is what it purports to be, that it may be bought for what it really is. United States v. Lexington M. & E. Co., 232 U. S. 399, 409, 34 Sup. Ct. 337, 58 L. Ed. 658. Complainant agrees heartily with this principle, but contends that to put glucose on its labels would deceive and mis-

221 F.—63

lead the purchaser; that when he buys corn syrup mixed with sugar syrup he knows exactly what he is getting; that he thinks glucose is made of the skins or hoofs of animals, like animal glue, and will not buy Karo if he thinks it contains glucose. This is only another form of the extended controversy of "Glucose v. Corn Syrup" in the Department of Agriculture, which ended in the decision of the Three Secretaries, and which occupies considerable space in the record. The Wisconsin Legislature has attempted to decide the controversy for that state by the act of 1913, but Congress has placed its ultimate decision in other hands. In its legislation Wisconsin has raised a question of misbranding, and tried to settle it, once for all. As to intrastate commerce in that state the question is settled. But as to interstate and foreign commerce it is otherwise, the power to set the question at rest being vested elsewhere.

Suppose the label remains as it is, showing corn syrup and sugar syrup, and suit in rem be brought in this court against McDermott (who was prosecuted in the other case), by seizure of the articles in his possession. At the same time a criminal suit by the state is instituted against him in the state court, for noncompliance with the act of 1913. He is successful in the federal case, is convicted in the other, and brings habeas corpus in this court or a state court. What would the proper judgment be? Defendant contends that both laws should be sustained, and McDermott be punished for not doing what the federal court has ruled he need not do, and the state court that he must do. The conflict is obvious. If defendant's theory is the correct one, the manufacturer who furnished McDermott with the goods must either comply with the state law or go out of business. The Wisconsin law would thus be the supreme law of the case, and the federal law powerless, although the supremacy of the latter is declared by the Constitution.

Assuming the Wisconsin law to be simply one requiring display of ingredients, and not one creating a definition, its whole purpose was met when, long before its passage, complainant labeled its product "corn syrup" pursuant to the federal law, and expressly under the Wisconsin act of 1905. If in assumed compliance with the Indiana law, requiring the amount of crude fat to appear on the label, the dealer should substitute the word "suet," or "leaf lard," it seems plain that the state would be powerless to interfere.

Defendant contends, and the Wisconsin law declares, that the chief ingredient in complainant's product is not a syrup at all, not being derived from the juice of a sugar-producing plant. Calling it corn syrup must therefore be misleading by the standard so set up. Here is a palpable conflict between state and federal standards, tending to produce inevitable disagreement in rulings. The corn syrup label has been decided to comply with federal law (United States v. 779 Cases of Molasses, 174 Fed. 325, 98 C. C. A. 197), and presumably meets its requirements (McDermott v. Wisconsin, 228 U. S. 115, 33 Sup. Ct. 431, 57 L. Ed. 754, 47 L. R. A. [N. S.] 984).

The whole argument of complainant's counsel, to the effect that the Wisconsin statute really deals with misbranding, and that this question is for the federal courts alone, is challenged by the contention

that no question of misbranding can ever arise under the federal act by complying with such statute, because it is simply required that glucose be labeled. If corn syrup contains glucose, let the label show it; if it does not contain glucose, the statute is without application. Complainant (it is said) admits that its mixture contains the product obtained from the incomplete hydrolysis of starch, or glucose. By so labeling it the truth is told, and hence the label cannot possibly be false or misleading in any way. A corollary to this contention is that the question of misbranding should be decided in this case, as an incident to the equity jurisdiction invoked by the bill.

This contention may be entirely correct, but is deemed immaterial. It makes no difference in the aspect of the case now under consideration whether the state statute has correctly determined the long-standing controversy of Glucose v. Corn Syrup, because that statute could not make any determination whatsoever on that subject. If it be said that the police power of the state is emasculated by a construction which leaves it the bare authority to say that ingredients must appear on labels in interstate commerce, without the power to prescribe the particular names, the answer is that Congress might itself have occupied the whole field, without leaving any of it to the state. If the state cannot punish the use of the formula of $C_6H_{12}O_6$ on a glucose label, or nux vomica on a strychnine label, the federal courts may do so with at least equal efficiency. In any event the federal law covers the whole subject.

When the state attempts, as in this instance, to do more than is left to it under Savage v. Jones, and by legislation to force its own notions of nomenclature upon a pre-existing food label made under a rule of the Three Secretaries, and upheld as valid by the Circuit Court of Appeals of one of the federal circuits, it is not strange that confusion and uncertainty result. It cannot make its own label, but can only attempt to impeach and partially destroy the force of a lawfully existing one. Without power to wholly destroy the government label, it attempts to break its force as far as possible by requiring the dealer either to obey the state law or make his label nothing but a jargon of apparently conflicting words and figures. McDermott v. Wisconsin has ruled that the state may not take off the federal label, so it is proposed to break its force and destroy and confuse its meaning, without its actual removal, thus keeping to the letter of that decision, but practically destroying its effect. The label is the evidence of guilt or innocence in proceedings under the federal law, but the effect of the state law is to confuse, weaken, and partially impeach that evidence. Rights under the Constitution are thus affected or neutralized, and their enforcement hampered, impeded, and burdened.

A further contention is made to the effect that, while it is true that the question of misbranding is to be determined by federal proceedings under the federal act, yet when the question arises incidentally in other forms of action it may be determined whenever necessary to a decision. This rule is established in Pratt v. Paris G. L. & C. Co., 168 U. S. 255, 18 Sup. Ct. 62, 42 L. Ed. 458, but its application to this case is not perceived. State courts, or the District Court in its concurrent jurisdiction, may determine whether a patent is valid, but

neither may entertain a suit for patent infringement. Probably the Wisconsin courts, in an action for breach of a contract of sale of corn syrup, might decide whether the article was properly branded, in case that fact was relevant to contract validity. But it is a wholly different thing for a Wisconsin court to usurp the exclusive power to punish misbranding given by the Food and Drug's Act to the federal District Court, by doing what is here threatened in the prosecution of retailers of glucose or corn syrup in the criminal courts of the state. A state court may properly decide whether a ship on the sea has been negligent, but it cannot by a proceeding in rem seize the ship for such delict, because that is within the exclusive power of the admiralty courts. The Glide, 167 U S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; Minnesota v. Northern Securities Co., 194 U. S. 48, 71, 24 Sup. Ct. 598, 48 L. Ed. 870.

If it were necessary in deciding the case to pass upon the two other questions raised (reasonable exercise of police power and due process of law), the question of misbranding might properly be decided, as incidental to those matters. But, the question of commerce being decisive of the whole controversy, the other matters are not considered. Nor is it necessary to decide whether Food Inspection Decision 87 of the Three Secretaries is a part of the Food and Drugs Act as a regulation made for the better execution of the law, or is a mere advisory decision, designed to put an end in the Department to the controversy of "Glucose v. Corn Syrup." While I think it is only an advisory opinion, and not a rule or regulation, a decision on the point is not essential.

[2] The Wisconsin statute of 1913, as applied to purely internal commerce, should be sustained. The rights of complainant do not require any other course. While the language of the law is general, and is broad enough to include all sales of the food product in question, whether interstate or internal, yet it is the settled rule in Wisconsin to restrain such general language to internal commerce if to do otherwise would avoid the statute. Greek-American Sponge Co. v. Richardson Drug Co., 124 Wis. 469, 476, 102 N. W. 888, 109 Am. St. Rep. 961; Chicago & N. W. R. Co. v. State, 128 Wis. 553, 650, 108 N. W. 557. A similar rule was applied to a taxation statute under different circumstances in St. Louis & S. W. R. Co. v. Arkansas, 235 U. S. 350, 368, 35 Sup. Ct. 99, 59 L. Ed. ——, and in El Paso & N. E. R. Co. v. Gutierrez, 215 U. S. 87, 96, 30 Sup. Ct. 21, 54 L. Ed. 106. Defendant should be restrained from attempting to apply the statute to complainant's goods or retailers thereof, because this would interfere with interstate commerce, and the scope of the statute thus restricted to internal concerns, which are its proper field, and, as so restricted, held valid.

There should be a decree for a perpetual injunction restraining defendant, as dairy and food commissioner, from putting in force against complainant or its jobbers or retailers the provisions of the statute of 1913, and declaring the statute valid as to the internal commerce of the state, with costs.