# McDERMOTT *v.* STATE OF WISCONSIN.

# GRADY *v.* SAME.

ERROR TO THE SUPREME COURT OF THE STATE OF
WISCONSIN.

Nos. 112, 113.   Argued January 17, 20, 1913.—Decided April 7, 1913.

State legislation in regard to labeling articles in interstate commerce
which are required to be branded under the Federal Pure Food and
Drugs Act, is void so far as it interferes with the provisions of such
act and imposes a burden on interstate commerce; and so *held* as to
certain provisions of the Wisconsin statute.

Congress not only has the right to pass laws regulating legitimate
commerce among the States and with foreign nations, but also has
full power to bar from the channels of such commerce illicit and
harmful articles.

Congress may itself determine the means appropriate to this purpose;
and, so long as they do no violence to the other provisions of the
Constitution, Congress is itself the judge of the means to be em-
ployed in exercising the powers conferred on it in this respect.

The Pure Food and Drugs Act must be construed in the light of the
purpose and power of Congress to exclude poisonous and adulterated
food from interstate commerce. *Hipolite Egg Co.* v. *United States,*
220 U. S. 45.

Articles, the shipment or delivery of which in interstate commerce is
prohibited by § 2 of the Food and Drugs Act, are those which are
adulterated or misbranded within the meaning of the act in the
light of those provisions of the act wherein adulteration and mis-
branding are defined.

"Package" or its equivalent, as used in § 7 of the Food and Drugs Act,
refers to the immediate container of the article which is intended for
consumption by the public.  To limit the requirements of the act
to the outside box which is not seen by the purchasing public would
render nugatory one of the principal provisions of the act.

*Quære,* and not necessary to decide in this case, what is the exact mean-
ing of the terms "original unbroken package" and "broken pack-
age" as used in §§ 2, 3 and 10 of the Food and Drugs Act.

While the enactment by Congress of the Food and Drugs Act does not

prevent the State from making regulations, not in conflict therewith, to protect its people against fraud or imposition by impure food and drugs, *Savage* v. *Jones*, 225 U. S. 501, the State may not, under the guise of exercising its police power, impose burdens upon interstate commerce or enact legislation in conflict with the act of Congress on the subject.

A state law on a subject within the domain of Congress must yield to the superior power of Congress; to the extent that it interferes with or frustrates the operation of the act of Congress a state statute is void.

Whether articles in interstate commerce have been branded in accordance with the terms of the Food and Drugs Act is not for the State to determine but for the Federal courts in the manner indicated by Congress.

As the Federal Food and Drugs Act requires articles in interstate commerce to be properly labeled, a State cannot require a label when properly affixed under that statute to be removed and other labels authorized by its own statute to be affixed to the package containing the article so long as it remains unsold by the importer, whether it be in the original case or not.

The doctrine of original packages was not intended to limit the right of Congress, when it chose to assert it, as it has done in the Food and Drugs Act, to keep the channels of interstate commerce free from the carriage of injurious or fraudulently branded articles and to choose appropriate means to that end.

State legislation cannot impair legislative means provided by Congress in a Federal statute for the enforcement thereof.

The statute of Wisconsin, of 1907 prescribing a label for corn syrup and prohibiting all others is invalid so far as it relates to articles properly branded on the immediate container thereof under the Federal Food and Drugs Act and brought into the State in interstate commerce, so long as they remain unsold by the importer, whether in the original outside package or not.

143 Wisconsin, 18, reversed.

THE facts, which involve the constitutionality of the Wisconsin syrup law and the construction of the Federal Pure Food and Drug law, are stated in the opinion.

*Mr. H. O. Fairchild* for plaintiffs in error.

*Mr. John M. Olin*, with whom *Mr. L. H. Bancroft*, Attorney General of the State of Wisconsin, *Mr. Harry L.*

*Butler, Mr. William R. Curkeet* and *Mr. Burr W. Jones* were on the brief, for defendant in error:

The Wisconsin act of 1907, is not invalid because in violation of the commerce clause of the Federal Constitution or of the Federal Food and Drugs Act of 1906.

In the absence of congressional action otherwise indicating, an article ceases to be the subject of interstate commerce, and becomes subject to the police power of the State, when the original package in which it is usually, and in good faith shipped, has been received and broken by the importer, or when he has made the first sale thereof, in the original package so received. *Cook* v. *Marshall County,* 196 U. S. 261; *Austin* v. *Tennessee,* 179 U. S. 343; *May* v. *New Orleans,* 178 U. S. 496; *Sponge Co.* v. *Drug Co.,* 124 Wisconsin, 469.

The mere fact that Congress, in the exercise of its power to regulate commerce, has legislated upon the general subject of the transportation and sale of an article of interstate commerce, does not, in itself, take away the right of the State, in the exercise of its police power, to make regulations concerning the same article as a subject of interstate commerce, at least so long as such state regulations do not conflict with the Federal regulation.

Congressional regulation does not exclude state regulation except so far as the former, lawfully exercised, conflicts with the latter. *Reid* v. *Colorado,* 187 U. S. 137; *Asbell* v. *Kansas,* 209 U. S. 251; *Crossman* v. *Lurman,* 192 U. S. 189; *State* v. *C., M. & St. P. Ry. Co.,* 136 Wisconsin, 407, 416; *Chicago, M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 133; *M., K. & T. Ry. Co.* v. *Haber,* 169 U. S. 613, 624; *Gulf &c. Ry. Co.* v. *Hefley,* 158 U. S. 98, 104; *W. U. Tel. Co.* v. *James,* 162 U. S. 650, 654; *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345; *Penn. R. Co.* v. *Hughes,* 191 U. S. 477; *Savage* v. *Scovell,* 171 Fed. Rep. 566; *Northern P. R. Co.* v. *Washington,* 222 U. S. 370, 379;

*Southern R. Co.* v. *Reid,* 222 U. S. 424, 442; *Savage* v. *Jones,* 225 U. S. 501.

The act of 1906 does not expressly or impliedly operate upon the original package of commerce, after it has been broken, or after its first sale as such by the importer, but on the contrary, the act clearly shows the congressional intention to leave the article subject to state regulation after it has so ceased to be the subject of interstate commerce; and, therefore, there is no conflict between the Federal act and the state law.

The terms "original, unbroken package" as used in §§ 2 and 10 of the act, and "unbroken package" as used in § 3 of the act, had prior to its adoption been judicially treated as synonymous. *Low* v. *Austin,* 13 Wall. 29; *United States* v. *Fox,* Fed. Cas. No. 15155.

Where a party, in transporting goods from one State to another, selects an unusual method for the express purpose of evading or defying the police laws of the latter State, the commerce clause of the Federal Constitution and an act of Congress cannot be invoked as a cover for fraudulent dealings. *Austin* v. *Tennessee,* 179 U. S. 343.

An original package within the meaning of the Food and Drugs Act is the unit, complete in itself, delivered by the shipper to the carrier addressed to the consignee, and received by him in the identical condition in which it was sent, without separation of the contents in any manner. Thornton, Foods and Drugs, p. 971.

The foregoing was the judicially accepted definition of "original package," "original, unbroken package," and "unbroken package," at the time of the adoption of the act of 1906. *Brown* v. *Maryland,* 12 Wheat. 419; *Low* v. *Austin,* 13 Wall. 29; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Leisy* v. *Hardin,* 135 U. S. 100; *Vance* v. *Vandercook Co.,* 170 U. S. 438; *Austin* v. *Tennessee,* 179 U. S. 343; *Guckenheimer* v. *Sellers,* 81 Fed. Rep. 997; *May* v. *New Orleans,* 178 U. S. 496; *In re Harmon,* 43 Fed. Rep. 372; *Cook* v.

*Marshall Co.*, 196 U. S. 261; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *United States* v. *Fox*, 25 Fed. Cas. No. 15155; *State ex rel.* v. *Board*, 15 So. Rep. (La.) 10; *Commonwealth* v. *Schollenberger*, 156 Pa. St. 201; Thornton, Foods and Drugs (1912), pp. 143, 150, 177.

The Federal act is not to be construed as displacing state authority to regulate the adulteration or branding of foods which have been shipped from without the State, and thereby become subject to the Federal law, but which have been removed from the original package of shipment. *Armour & Co.* v. *Bird*, 123 N. W. Rep. 580 (Dec., 1909); *Savage* v. *Scovell*, 171 Fed. Rep. 566 (1908).

A construction of the act of 1906, which would make it operate upon the contents of the original package of shipment or upon such original package after its first sale by the importer, would render the act, thus far at least, invalid, as an unconstitutional invasion by Congress of the power reserved to the States to regulate their own internal affairs.

The regulation of the internal affairs of a State by Congress is as unconstitutional as is the direct attempt by a State to regulate interstate commerce. *Ill. Cent. R. R.* v. *McKendree*, 203 U. S. 514; *Geer* v. *Connecticut*, 161 U. S. 519, 531; *Covington &c. Bridge Co.* v. *Kentucky*, 154 U. S. 204, 210; *Sands* v. *Manistee R. I. Co.*, 123 U. S. 288, 295; *The Daniel Ball*, 10 Wall. 557, 564; *The Employers' Liability Cases*, 207 U. S. 463, 502; *United States* v. *DeWitt*, 9 Wall. 41; *Gibbons* v. *Ogden*, 9 Wheat. 1, 186; *License Cases*, 5 How. 504, 574; *Keller* v. *United States*, 213 U. S. 139; *Ex parte Agnew*, 89 Nebraska, 306.

A statute, whose terms are broad enough to include both intrastate and interstate commerce, will be construed as applicable only to intrastate commerce, when it would be unconstitutional if applied to interstate commerce. *Chicago & N. W. Ry. Co.* v. *State*, 128 Wisconsin, 553, 650, 651; *Church of the Holy Trinity* v. *United States*, 143

U. S. 457, 459; *State* v. *Anson*, 132 Wisconsin, 461, 473;
17 Am. & Eng. Ency. of Law, 2d Ed., 75, 76; *Ratter-
man* v. *West. Un. Tel. Co.*, 127 U. S. 411, 427, 428; *Mc-
Cabe* v. *Atchison, T. & S. F. Ry. Co.*, 186 Fed. Rep. 966,
972; *Commonwealth* v. *Gagne*, 153 Massachusetts, 205; *Com-
monwealth* v. *People's Express Co.*, 88 N. E. Rep. 420, 424;
*West. Un. Tel. Co.* v. *State*, 121 S. W. Rep. 194, 196;
*Wagner* v. *West. Un. Tel. Co.*, 133 S. W. Rep. 91; *Sponge
Co.* v. *Drug Co.*, 124 Wisconsin, 469, 476; *State* v. *West. Un.
Tel. Co.*, 75 Kansas, 620; 90 Pac. Rep. 299; *G., C. & S.
F. Ry. Co* v. *Gray*, 87 Texas, 313; *I. & G. N. R. Co.* v.
*R. R. Commissioners*, 99 Texas, 332; *McCord* v. *State*,
101 Pac. Rep. 280, 286; *Standard Oil Co.* v. *State*, 117
Tennessee, 618; *Freight Discrimination Cases*, 95 N. Car.
428; *Beardsley* v. *N. Y., L. E. & W. R. Co.*, 44 N. Y.
Supp. 175, 178; *Dillon* v. *Erie Ry. Co.*, 43 N. Y. Supp.
320, 326; *Ex parte Agnew*, 89 Nebraska, 306; 131 N. W.
Rep. 817, 820; *El Paso & N. E. Ry. Co.* v. *Gutierrez*,
215 U. S. 87, 96.

Under the principles here announced—and they have
frequently been applied by this court—there should be no
difficulty in sustaining this act, even though the language
is broad enough to include both interstate and intrastate
commerce.  It cannot be said that the idea of controlling
interstate commerce was even present to the mind of the
legislature, much less that it was the controlling induce-
ment to the passage of the act for the purpose of controll-
ing commerce within the State.  *Berea College* v. *Kentucky*,
211 U. S. 45; *Presser* v. *Illinois*, 116 U. S. 252, 263; *Albany
County* v. *Stanley*, 105 U. S. 305; *Field* v. *Clark*, 143 U. S.
649, 695; *Huntington* v. *Worthen*, 120 U. S. 97, 102; *Scott* v.
*Donald*, 165 U. S. 58, 105; *State* v. *Sawyer County*, 140
Wisconsin, 634; *Quiggle* v. *Herman*, 131 Wisconsin, 379,
382; *Cornish* v. *Tuttle*, 53 Wisconsin, 45; *Lynch* v. *Steamer
"Economy,"* 27 Wisconsin, 69, 72; *Walsh* v. *Dousman*, 28
Wisconsin, 541; *Kennedy* v. *Railway Co.*, 22 Wisconsin,

581, 590; *Wakely* v. *Mohr,* 15 Wisconsin, 609; *Slauson* v. *Racine,* 13 Wisconsin, 398, 404; *Fayette County* v. *People's Bank,* 10 L. R. A. 196, 201; *McCullough* v. *Virginia,* 172 U. S. 102, 112; *Des Moines Water Co.* v. *City of Des Moines,* 192 Fed. Rep. 193, 196; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 21, 53; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 395.

Whether the statute in question shall be construed to be applicable to intrastate commerce solely, or not, is purely a question for the state court, and upon the proper construction to be given, the state courts are not restricted by Federal decisions. In such cases the Federal courts adopt the construction given by the state courts. *Osborne* v. *Florida,* 164 U. S. 650, 654; *Louisville &c. Ry. Co.* v. *Mississippi,* 133 U. S. 587, 591; *St. L., I. M. &c. Ry.* v. *Paul,* 173 U. S. 404; *Tullis* v. *Lake Erie & Western Ry.,* 175 U. S. 348; *Chesapeake & Ohio Ry. Co.* v. *Kentucky,* 179 U. S. 388, 395; *Buffalo Refrigerating Mach. Co.* v. *Penn. H. & P. Co.,* 178 Fed. Rep. 696; *Spinello* v. *N. Y., N. H. & H. R. Co.,* 183 Fed. Rep. 762; *Chicago &c. Ry. Co.* v. *Minnesota,* 134 U. S. 418, 456; *San Diego Land Co.* v. *National City,* 174 U. S. 739, 748.

The Wisconsin statute in no way violates the Fourteenth Amendment of the United States Constitution.

The act in question falls clearly within the police power of the State, and as such should be sustained. It is only when the bounds of reason have been so clearly exceeded as to violate some constitutional prohibition, express or implied, that the court has any power to interfere with the exercise of this legislative power. *State* v. *Redmon,* 134 Wisconsin, 89; *In re Rahrer,* 140 U. S. 545; *Austin* v. *Tennessee,* 179 U. S. 343.

Aside from the question of the wholesomeness or unwholesomeness of the article, the legislation in Wisconsin is a proper exercise of the police power. This extends to the prevention of deception and fraud in the sale of food

products as well as to the securing of wholesomeness in such products. The Wisconsin Supreme Court has, in a number of cases, laid down the rule that the legislature, in the exercise of its police power, may legislate as to all matters appertaining to the lives, limbs, health, comfort, good morals, peace and safety of society. *Baker* v. *State*, 54 Wisconsin, 368, 372; *State ex rel. Larkin* v. *Ryan*, 70 Wisconsin, 676, 681; *State* v. *Heinemann*, 80 Wisconsin, 253; *Bittenhaus* v. *Johnston*, 92 Wisconsin, 588; *Kellogg* v. *Currens*, 111 Wisconsin, 431; *State* v. *Redmon*, 134 Wisconsin, 89; *State* v. *Cary*, 126 Wisconsin, 135.

The police power of the State is not limited to regulations necessary for the preservation of good order or the public health and safety. The prevention of fraud and deceit, cheating, and imposition are equally within the power. *People* v. *Freeman*, 242 Illinois, 373; *People* v. *Wagner*, 86 Michigan, 594.

The principle for which the State contends is illustrated in oleomargarine decisions. See *Powell* v. *Pennsylvania*, 127 U. S. 678; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Collins* v. *New Hampshire*, 171 U. S. 30; *State* v. *Marshall*, 64 N. H. 549; *People* v. *Arensburg*, 105 N. Y. 123, 129; *State* v. *Addington*, 77 Missouri, 110, 118; *Butler* v. *Chambers*, 36 Minnesota, 69; *Weideman* v. *State*, 55 Minnesota, 183; *State* v. *Newton*, 50 N. J. L. 534; *State* v. *Capital City Dairy Co.*, 62 Oh. St. 350; *Capital City Dairy Co.* v. *Ohio*, 183 U. S. 238; *Commonwealth* v. *Caulfield*, 211 Pa. St. 644; *Commonwealth* v. *McDermott*, 224 Pa. St. 362; *People* v. *Freeman*, 242 Illinois, 373.

The same principle is also illustrated by the legislation as to other food products. See *Commonwealth* v. *Caulfield*, 211 Pa. St. 644; *Commonwealth* v. *McDermott*, 224 Pa. St. 362.

The law is a constitutional and proper exercise of the police power of the State. See decisions dealing with the

manufacture and sale of food products other than oleomargarine. *Crossman* v. *Lurman*, 171 N. Y. 329; *S. C.*, affirmed, 192 U. S. 189; *State* v. *Aslesen*, 50 Minnesota, 5; *State* v. *Hanson*, 86 N. W. Rep. 768; *Iowa* v. *Snow*, 81 Iowa, 642; *Stolz* v. *Thompson*, 44 Minnesota, 271; *State* v. *Sherod*, 80 Minnesota, 446; *State* v. *Layton*, 160 Missouri, 474; *Palmer* v. *State*, 39 Oh. St. 236; *Chicago* v. *Bowman Dairy Co.*, 234 Illinois, 294; *People* v. *Wagner*, 86 Michigan, 594; *State* v. *Crescent Cream Co.*, 83 Minnesota, 284; *State* v. *Tetu*, 98 Minnesota, 351; *Hathaway* v. *McDonald*, 27 Washington, 659; *People* v. *Niagara Fruit Co.*, 77 N. Y. Supp. 805; *S. C.*, aff'd 173 N. Y. 629; *People* v. *Girard*, 145 N. Y. 105; *People* v. *Worden Grocer Co.*, 118 Michigan, 604; *Board of Health* v. *Vandruens*, 72 Atl. Rep. 125; *Commonwealth* v. *Evans*, 132 Massachusetts, 11; *People* v. *Cipperly*, 37 Hun, 324, dissenting opinion aff'd 101 N. Y. 634; *People* v. *West*, 106 N. Y. 293; *State* v. *Campbell*, 64 N. H. 402; *State* v. *Smythe*, 14 R. I. 100; *Arbuckle* v. *Blackburn*, 113 Fed. Rep. 616 (1902); *Armour & Co.* v. *Bird*, 159 Michigan, 1.

The Constitution of the United States does not secure to anyone the privilege of defrauding the public. *In re Rahrer*, 140 U. S. 545; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 345; *Crossman* v. *Lurman*, 192 U. S. 189.

The power of the State to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order and prosperity, is a power originally and always belonging to the States, not surrendered by them to the General Government nor directly restrained by the Constitution of the United States, and essentially exclusive. *In re Rahrer*, 140 U. S. 545, 554–555; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Crossman* v. *Lurman*, 192 U. S. 189; *Hathaway* v. *McDonald*, 27 Washington, 659; *People* v. *Niagara Fruit Co.*, 77 N. Y. Supp. 805; *Jewett Brothers* v. *Small*, 20 S. Dak. 232; *Powell*

v. *Pennsylvania,* 127 U. S. 678; *Lieberman* v. *Van De Carr,* 199 U. S. 552; *Logan & Bryan* v. *Postal Tel. Co.,* 157 Fed. Rep. 570, 583; *State* v. *Crescent Creamery Co.,* 83 Minnesota, 284; *Arbuckle* v. *Blackburn,* 113 Fed. Rep. 616.

The provision of the Federal Constitution, invoked by the defendants, was not designed to interfere with the exercise of the police power by the States, and it has not shorn the States of their power to regulate trades and occupations so as to guard against injury to the public, and to prevent deception and fraud in the manufacture and sale of food products. See in addition to cases cited above: *Barbier* v. *Connolly,* 113 U. S. 27, 31; *St. Louis* v. *Fisher,* 167 Missouri, 654; *St. Louis* v. *Bippen,* 201 Missouri, 528; *Powell* v. *Commonwealth,* 114 Pa. St. 265; *Gundling* v. *City of Chicago,* 177 U. S. 183; *Hill* v. *Hesterberg,* 184 N. Y. 126; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338; *Silz* v. *Hesterberg,* 211 U. S. 31.

The fact that corn syrup may be a recognized article of commerce is immaterial if the sale of the article under that name does, in fact, mislead and deceive the public. *Crossman* v. *Lurman,* 192 U. S. 189; affirming *S. C.,* 171 N. Y. 329; *State* v. *Tetu,* 98 Minnesota, 351.

The decision of the lower court is a complete answer to counsel's contention as to the facts established by the evidence.

The decision of the lower court was in no way controlled by any mistake of fact.

The claim that the article in question cannot be sold under the name of "glucose flavored with refiners' syrup" is unfounded.

MR. JUSTICE DAY delivered the opinion of the court.

The plaintiffs in error, George McDermott and T. H. Grady, were severally convicted in the Circuit Court of Dane County, in the State of Wisconsin, upon complaints made against them by an Assistant Dairy and Food

Commissioner of that State for the violation of a statute of Wisconsin relating to the sale of certain articles and for the protection of the public health. The convictions were affirmed by the decision of the Supreme Court of Wisconsin. 143 Wisconsin, 18.

The complaint against McDermott charged that on March 2, 1908, at Oregon, in Dane County, he "did unlawfully have in his possession with intent to sell, and did offer and expose for sale and did sell, a certain article, product, compound and mixture composed of more than seventy-five per cent. glucose and less than twenty-five per cent. of cane syrup, said cane syrup being then and there mixed with said glucose, and that the can containing said compound and mixture was then and there unlawfully branded and labeled 'Karo Corn Syrup' and was then and there further unlawfully branded and labeled '10% Cane Syrup, 90% Corn Syrup,' contrary to the statute in such case made and provided." As to Grady, the complaint was similar to that against McDermott except that the label designated the mixture as "Karo Corn Syrup with Cane Flavor" and added "Corn Syrup, 85%." The statute of Wisconsin for the violation of which plaintiffs in error were convicted is found in Laws of Wisconsin for 1907, § 4601 at page 646, being chapter 557, and the pertinent parts of it are as follows:

"Section 1. . . . No person, . . . by himself . . . or agent . . . shall sell, offer or expose for sale or have in his possession with intent to sell any syrup, maple syrup, sugar-cane syrup, sugar syrup, refiners' syrup, sorghum syrup or molasses, mixed with glucose, unless the barrel, cask, keg, can, pail or other original container, containing the same be distinctly branded or labeled so as to plainly show the true name of each and all of the ingredients composing such mixture, as follows:

* * * * * * * *

"Third. In case such mixture shall contain glucose in a proportion exceeding 75 per cent. by weight, it shall be labeled and sold as 'Glucose flavored with Maple Syrup,' 'Glucose flavored with Sugar-cane Syrup,' . . . 'Glucose flavored with Refiners' Syrup' . . . as the case may be. The labels . . . shall bear the name and address of the manufacturer or dealer. . . . In all mixtures in which glucose is used in the proportion of more than 75 per cent. by weight, the name of the syrup or· molasses which is mixed with the glucose for flavoring purposes and the words showing that said syrup or molasses is used as a flavoring, as provided in this section, shall be printed on the label of each container of such mixture. . . . The mixtures or syrups designated in this section shall have no other designation or brand than herein required that represents or is the name of any article which contains a saccharine substance; . . . nor shall any of the aforesaid glucose, syrups, molasses or mixtures contain any substance injurious to health, nor any other article or substance otherwise prohibited by law in articles of food."

The facts are that the plaintiffs in error were retail merchants in Oregon, Dane County, Wisconsin; that before the filing of the complaints against them each had bought for himself for resale as such merchant from wholesale grocers in Chicago and had received by rail from that city twelve half gallon tin cans or pails of the articles designated in the complaints, each shipment being made in wooden boxes containing the cans, and that when the goods were received at their stores the respective plaintiffs in error took the cans from the boxes, placed them on the shelves for sale at retail, and destroyed the boxes in which the goods were shipped to them, as was customary in such cases. From their nature, the articles thus canned and offered to be sold, instead of being labeled as they were, if labeled in accordance with

the state law, would have been branded with the words "Glucose flavored with Refiner's Syrup," and, as the statute provides that the mixtures or syrups offered for sale shall have upon them no designation or brand which represents or contains the name of a saccharine substance other than that required by the state law, the labels upon the cans must be removed, if the state authority is recognized.

Plaintiffs in error contend that the cans were labeled in accordance with the Food and Drugs Act passed by Congress, June 30, 1906, 34 Stat. 768, c. 3915, and that that fact is evidenced by the decision of the Secretaries of the Treasury, Agriculture and Commerce and Labor made under the claimed authority of that act, which is as follows:

WASHINGTON, D. C., February 13, 1908.

"We have each given careful consideration to the labeling, under the Pure Food Law, of the thick, viscous syrup obtained by the incomplete hydrolysis of the starch of corn, and composed essentially of dextrose, maltose and dextrin. In our opinion it is lawful to label this syrup as corn syrup, and if to the corn syrup there is added a small percentage of refiner's syrup, a product of cane, the mixture in our judgment is not misbranded if labeled 'corn syrup with cane flavor.'

George B. Cortelyou, Secretary of the Treasury.

James Wilson, Secretary of Agriculture.

Oscar H. Strauss, Secretary of Commerce and Labor."

And it is insisted that the Federal Food and Drugs Act passed under the authority of the Constitution has taken possession of this field of regulation and that the state act is a wrongful interference with the exclusive power of Congress over interstate commerce, in which, it appears, the goods in question were shipped. The case presents

among other questions, the constitutional question whether the state act in permitting the sale of this article only when labeled according to the state law is open to the objection just indicated.

That Congress has ample power in this connection is no longer open to question. That body has the right not only to pass laws which shall regulate legitimate commerce among the States and with foreign nations, but has full power to keep the channels of such commerce free from the transportation of illicit or harmful articles, to make such as are injurious to the public health outlaws of such commerce and to bar them from the facilities and privileges thereof. Congress may itself determine the means appropriate to this purpose, and so long as they do no violence to other provisions of the Constitution it is itself the judge of the means to be employed in exercising the powers conferred upon it in this respect. *McCulloch* v. *Maryland,* 4 Wheat. 316, 421; *Lottery Case,* 188 U. S. 321, 355; *Hipolite Egg Co.* v. *United States,* 220 U. S. 45; *Hoke* v. *United States,* 227 U. S. 308.

The Food and Drugs Act was passed by Congress, under its authority to exclude from interstate commerce impure and adulterated food and drugs and to prevent the facilities of such commerce being used to enable such articles to be transported throughout the country from their place of manufacture to the people who consume and use them, and it is in the light of the purpose and of the power exerted in its passage by Congress that this act must be considered and construed. *Hipolite Egg Co.* v. *United States, supra.*

Section 2 of the act provides that "the introduction into any State or Territory or the District of Columbia from any other State or Territory or the District of Columbia . . . of any article of food or drugs which is adulterated or misbranded, within the meaning of this Act, is hereby prohibited; and any person who shall

ship or deliver for shipment from any State or Territory or the District of Columbia to any other State or Territory or the District of Columbia . . . any such article so adulterated or misbranded within the meaning of this Act, . . . shall be guilty of a misdemeanor, and for such offense be fined," etc. The article of food or drugs, the shipment or delivery for shipment in interstate commerce of which is prohibited and punished, is such as is *adulterated or misbranded within the meaning of the act.* What it is to adulterate or misbrand food or drugs within the meaning of the act requires a consideration of its other provisions, wherein such adulteration or misbranding is defined.

According to the terms of § 7 drugs are "adulterated" where, if they are sold under a name recognized in the United States Pharmacopœia and differ from the standard of strength therein laid down, the standard of strength, etc., is not plainly stated upon the bottle, box, or other container; and food is "adulterated" where it contains an added poisonous or other added deleterious ingredient which may render it injurious, except that, where directions are printed on the covering or the package for the necessary removal of such preservative, the provisions of the act shall apply only when the food is ready for consumption. Turning to § 8, we find that the term "misbranded," as used in the statute, shall apply to all drugs or articles of food, the package or label of which shall bear any statement, design or device regarding such article, or the ingredients or substances contained therein, which is false or misleading in any particular, and to any food or drug product which is falsely branded as to the State, etc., in which it was manufactured; and in the case of drugs it is provided that, if the contents of the package as originally put up shall have been removed in whole or in part and other contents placed in such package, or, if the package fail to bear a statement on the label as required, the drugs

shall be deemed misbranded; and as to food, if it shall be labeled or branded so as to deceive or mislead a purchaser or purport to be a foreign product when not so, or, if the contents of the package as originally put up shall have been removed in whole or in part and other contents placed in such package, or, if the package fail to bear a statement on the label as required, or, if in package form and the contents are stated in terms of weight or measure and they are not plainly and correctly stated on the outside of the package, or, if the package containing it or its label contain any design or device regarding the ingredients or the substances contained therein which are false or misleading in character, the food shall be deemed misbranded.

That the word "package" or its equivalent expression, as used by Congress in sections 7 and 8 in defining what shall constitute adulteration and what shall constitute misbranding within the meaning of the act, clearly refers to the immediate container of the article which is intended for consumption by the public, there can be no question. And it is sufficient, for the decision of these cases, that we consider the extent of the word package as thus used only, and we therefore have no occasion, and do not attempt, to decide what Congress included in the terms "original unbroken package" as used in the second and tenth sections and "unbroken package" in the third section. Within the limitations of its right to regulate interstate commerce, Congress manifestly is aiming at the contents of the package as it shall reach the consumer, for whose protection the act was primarily passed, and it is the branding upon the package which contains the article intended for consumption itself which is the subject-matter of regulation. Limiting the requirements of the act as to adulteration and misbranding simply to the outside wrapping or box containing the packages intended to be purchased by the consumer, so that the importer, by

removing and destroying such covering, could prevent the operation of the law on the imported article yet unsold, would render the act nugatory and its provisions wholly inadequate to accomplish the purposes for which it was passed.

The object of the statute is to prevent the misuse of the facilities of interstate commerce in conveying to and placing before the consumer misbranded and adulterated articles of medicine or food, and in order that its protection may be afforded to those who are intended to receive its benefits the brands regulated must be upon the packages intended to reach the purchaser. This is the only practical or sensible construction of the act, and, for the reasons we have stated, we think the requirements of the act as so construed clearly within the powers of Congress over the facilities of interstate commerce, and such has been the construction generally placed upon the act by the Federal courts. *In re Wilson,* 168 Fed. Rep. 566; *Nave-McCord Mercantile Co.* v. *United States,* 182 Fed. Rep. 46; *United States* v. *American Druggists' Syndicate,* 186 Fed. Rep. 387; *United States* v. *Ten Barrels of Vinegar,* 186 Fed. Rep. 399; *Von Bremen* v. *United States,* 192 Fed. Rep. 904; *United States* v. *Seventy-five Boxes of Alleged Pepper,* 198 Fed. Rep. 934.

While these regulations are within the power of Congress, it by no means follows that the State is not permitted to make regulations, with a view to the protection of its people against fraud or imposition by impure food or drugs. This subject was fully considered by this court in *Savage* v. *Jones,* 225 U. S. 501, in which the power of the State to make regulations concerning the same subject-matter, reasonable in their terms and not in conflict with the acts of Congress, was recognized and stated, and certain regulations of the State of Indiana were held not to be inconsistent with the Food and Drugs Act of Congress. While this is true, it is equally well settled that the State

may not, under the guise of exercising its police power or otherwise, impose burdens upon or discriminate against interstate commerce, nor may it enact legislation in conflict with the statutes of Congress passed for the regulation of the subject, and if it does, to the extent that the state law interferes with or frustrates the operation of the acts of Congress, its provisions must yield to the superior Federal power given to Congress by the Constitution. *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *Northern Pacific Ry. Co.* v. *Washington,* 222 U. S. 370; *Southern Ry. Co.* v. *Reid,* 222 U. S. 424; *Second Employers' Liability Cases,* 223 U. S. 1; *Savage* v. *Jones, supra,* 533.

Having in view the interpretation we have given the Food and Drugs Act and applying the doctrine just stated to the instant cases, how does the matter stand? When delivered for shipment and when received through the channels of interstate commerce the cans in question bore brands or labels which were supposed to comply with the requirements of the act of Congress. Whether the Secretaries had the power under the Food and Drugs Act to make the regulation set out above is not now before us. It is enough for the present purpose to say that, so far as this record discloses, it was undertaken in good faith to label the articles in compliance with the act of Congress, and, if they were not so labeled, by § 2 provision is made for the enforcement of the act by criminal prosecution and by § 10 by proceedings *in rem.* Whether the labels complied with the Federal law was not for the State to determine. This was a matter provided for by the act of Congress and to be determined as therein indicated by proper proceedings in the Federal courts.

The label upon the unsold article is in the one case the evidence of the shipper that he has complied with the act of Congress, while in the other, by its misleading and false character, it furnishes the proof upon which the Federal

authorities depend to reach and punish the shipper and to condemn the goods. If truly labeled within the meaning of the act his goods are immune from seizure by Federal authority; if the label is false or misleading within the terms of the law the goods may be seized and condemned. In other words the label is the means of vindication or the basis of punishment in determining the character of the interstate shipment dealt with by Congress. While in this situation, the goods being unsold, as a condition of their legitimate sale within the State, and also of their being in the possession of the importer for the purpose of sale and of being exposed and offered for sale by him, the Wisconsin statute provides that they shall bear the label required by the state law and none other (which represents a saccharine substance, as do the labels in these cases). In other words, it is essential to a legal exercise of possession of and traffic in such goods under the state law that labels which presumably meet with the requirements of the Federal law and for the determination of the correctness of which Congress has provided effectual means, shall be removed from the packages before the first sale by the importer. In this connection it might be noted that as a practical matter, at least, the first time the opportunity of inspection by the Federal authorities arises in cases like the present is when the goods, after having been manufactured, put up in package form and boxed in one State and having been transported in interstate commerce, arrive at their destination, are delivered to the consignee, unboxed, and placed by him upon the shelves of his store for sale. Conceding to the State the authority to make regulations consistent with the Federal law for the further protection of its citizens against impure and misbranded food and drugs, we think to permit such regulation as is embodied in this statute is to permit a State to discredit and burden legitimate Federal regulations of interstate commerce, to destroy rights arising out of the Federal

statute which have accrued both to the Government and the shipper, and to impair the effect of a Federal law which has been enacted under the Constitutional power of Congress over the subject.

To require the removal or destruction before the goods are sold of the evidence which Congress has, by the Food and Drugs Act, as we shall see, provided may be examined to determine the compliance or noncompliance with the regulations of the Federal law, is beyond the power of the State. The Wisconsin act which permits the sale of articles subject to the regulations of interstate commerce only upon condition that they contain the exclusive labels required by the statute is an act in excess of its legitimate power.

It is insisted, however, that, since at the time when the state act undertook to regulate the branding of these goods, namely, when in the possession of the plaintiffs in error and held upon their shelves for sale, the cans had been removed from the boxes in which they were shipped in interstate commerce, they had therefore passed beyond the jurisdiction of Congress, and their regulation was exclusively a matter for state legislation. This assertion is based upon the original package doctrine as it is said to have been laid down in the former decisions of this court. The term "original package" had its origin in *Brown* v. *Maryland*, 12 Wheat. 419, in which this court had to consider the extent of the protection given under Federal authority to articles imported into this country from abroad for sale, and it was there held that (p. 441):

"When the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package in which it

was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the Constitution."

That doctrine has been many times applied in the decisions of this court in defining the line of demarcation which shall separate the Federal from the state authority where the sovereign power of the Nation or State is involved in dealing with property. And where it has been found necessary to decide the boundary of Federal authority it has been generally held that, where goods prepared and packed for shipment in interstate commerce are transported in such commerce and delivered to the consignee and the package by him separated into its component parts, the power of Federal regulation has ceased and that of the State may be asserted. Some of the cases in which this doctrine has been considered will be found in the margin.[1] In the view, however, which we take of this case it is unnecessary to enter upon any extended consideration of the nature and scope of the principles involved in determining what is an original package. For, as we have said, keeping within its Constitutional limitations of authority, Congress may determine for itself the character of the means necessary to make its purpose effectual in preventing the shipment in interstate commerce of articles of a harmful character, and to this end may provide the means of inspection, examination and seizure necessary to enforce the prohibitions of the act, and when § 2 has been violated the Federal authority, in enforcing either § 2 or § 10, may follow the adulterated or misbranded article at least to the shelf of the importer.

---

[1] *Leisy* v. *Hardin,* 135 U. S. 100; *Rhodes* v. *Iowa,* 170 U. S. 412, 424; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, 19 *et seq.; May* v. *New Orleans,* 178 U. S. 496; *Austin* v. *Tennessee,* 179 U. S. 343; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 519 *et seq.; Cook* v. *Marshall County,* 196 U. S. 261; *Heyman* v. *Southern Ry. Co.,* 203 U. S. 270, 276; *Savage* v. *Jones,* 225 U. S. 501, 520; *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 200.

Congress having made adulterated and misbranded articles contraband of interstate commerce, in the manner we have already pointed out, provides in § 10 of the act that such articles may be proceeded against and seized for confiscation and condemnation while being transported from one State, Territory, district, or insular possession to another for sale, or, having been transported, remaining "unloaded, unsold, or in original unbroken packages," and the subsequent provisions of the section regulate the disposition of the articles seized. To make the provisions of the act effectual, Congress has provided not only for the seizure of the goods while being actually transported in interstate commerce, but has also provided for such seizure after such transportation and while the goods remain "unloaded, unsold, or in original unbroken packages." The opportunity for inspection en route may be very inadequate. The real opportunity of Government inspection may only arise when, as in the present case, the goods as packed have been removed from the outside box in which they were shipped and remain, as the act provides, "unsold." It is enough, by the terms of the act, if the articles are *unsold*, whether in original packages or not. Bearing in mind the authority of Congress to make effectual regulations to keep impure or misbranded articles out of the channels of interstate commerce, we think the provisions of § 10 are clearly within its power. Indeed it seems evident that they are measures essential to the accomplishment of the purpose of the act.

The doctrine of original packages had its origin in the opinion of Chief Justice Marshall in *Brown* v. *Maryland*, already referred to. It was intended to protect the importer in the right to sell the imported goods which was the real object and purpose of importation. To determine the time when an article passes out of interstate into state jurisdiction for the purpose of taxation is entirely

different from deciding when an article which has violated a Federal prohibition becomes immune. The doctrine was not intended to limit the right of Congress, now asserted, to keep the channels of interstate commerce free from the carriage of injurious or fraudulently branded articles and to choose appropriate means to that end. The legislative means provided in the Federal law for its own enforcement may not be thwarted by state legislation having a direct effect to impair the effectual exercise of such means.

For the reasons stated, the statute of Wisconsin, in forbidding all labels other than the one it prescribed, is invalid, and it follows that the judgments of the state court affirming the convictions of the plaintiffs in error for selling the articles in question without the exclusive brand required by the State, must be

*Reversed, and the cases are remanded to the state court for further proceedings not inconsistent with this opinion.*