UNITED STATES v. THIRTY-SIX BOTTLES OF LONDON DRY GIN et al.

(Circuit Court of Appeals, Third Circuit. February 2, 1914.)

No. 1772.

FOOD (§ 14*)—MISBRANDING—INTENT.

In a prosecution for condemnation of certain alleged misbranded gin under Food and Drugs Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 (U. S. Comp. St. Supp. 1911, p. 1357), providing that an article shall be deemed misbranded if it be labeled or branded so as to deceive or mislead the purchaser or purport to be a foreign product when it is not so, the intent of the maker not to deceive is immaterial; the gist of the offense being whether the label deceives or is calculated to mislead and deceive the purchaser.

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 10–13; Dec. Dig. § 14.*

What constitutes a violation of pure good regulations, see note to Brina v. United States, 105 C. C. A. 559.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; John B. McPherson, Judge.

Action by the United States against Thirty-Six Bottles of London Dry Gin; Sir Robert Burnett & Co., claimant. From a judgment in favor of claimant (205 Fed. 111), the United States brings error. Reversed, and new trial granted.

Walter C. Douglas, Jr., and Francis Fisher Kane, both of Philadelphia, Pa., for the United States.

John G. Johnson, of Philadelphia, Pa., for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

YOUNG, District Judge. This is a proceeding by the United States for the condemnation of certain bottles of gin alleged to be misbranded in violation of the Food and Drugs Act of June 30, 1906. The eighth section of that act provides that an article shall be deemed to be misbranded "if it be labeled or branded so as to deceive or mislead the purchaser or purport to be a foreign product when not so." The cause went to trial before a jury upon the libel and amended libel and answer thereto by Sir Robert Burnett & Co., the claimant. The libel alleges that the bottles were labeled and branded so as to purport to be a foreign product, whereas they were in fact a domestic product. The amended libel alleges that the bottles were labeled and branded so as to deceive and mislead purchasers thereof and to purport to be a foreign product when not so.

The assignments of error raise the single question whether or not, in a proceeding under the Food and Drugs Act for the condemnation of misbranded articles, the intent of the claimant is a necessary ingredient in the determination of the case. The learned trial judge admitted evidence, over the government's objection, for the purpose of showing good faith in the branding and absence of an intention to deceive. The court also submitted the question of intent as follows:

"The third question refers more particularly to the second charge of the government. It is this: In using the label in suit, did the maker of the gin

intend to deceive or mislead the purchaser by representing the gin to be a foreign product, when in truth it was not a foreign product."

Under the libel and amended libel, the sole question was whether the packages were so labeled and branded as to deceive and mislead the purchaser. This was not the question submitted to the jury, but the question submitted to the jury was, as we have seen: Did the maker of the gin intend to deceive or mislead the purchaser? The court was in error in submitting the question of intention to the jury. The Food and Drugs Act nowhere requires proof of intention by the use of the words "knowingly," "willfully," or such like words. The language of section 8 (in the case of food) subsec. 2, of the act, is:

"If it be labeled or branded so as to deceive or mislead the purchaser, or purport to be a foreign product when not so."

This language clearly means if the label deceives or misleads the purchaser; if the purport of the label be that it is a foreign product when it is not so. This the label, and the label alone, must determine. The intention of the user to deceive is of no consequence. The act strikes at deceiving the public by selling them one thing when they desire to purchase another. As has been frequently said by courts, the purchaser has the right to choose for himself what he will purchase, and, when he has purchased, the right to receive that which he desires and not something else. It would be destructive of the act, nullify it entirely, to allow the intent of the maker to be considered as a defense. We believe the decided cases sustain the principle that the intent is not a necessary ingredient in the determination of the case.

In McDermott v. Wisconsin, 228 U. S. 115, on page 132, 33 Sup. Ct. 431, at page 435 (57 L. Ed. 754), it is said by Mr. Justice Day:

"The label upon the unsold article is in the one case the evidence of the shipper that he has complied with the act of Congress, while in the other, by its misleading and false character, it furnishes the proof upon which the federal authorities depend to reach and punish the shipper and to condemn the goods. If truly labeled within the meaning of the act, his goods are immune from seizure by federal authority; if the label is false or misleading within the terms of the law, the goods may be seized and condemned. In other words, the label is the means of vindication or the basis of punishment in determining the character of the interstate shipment dealt with by Congress."

It is the purchaser that is to be protected.

"The purchaser has the right to determine for himself which he will buy, and which he will receive, and which he will eat. The vendor cannot determine that for the purchaser. He, of course, can make his arguments, but they should be fair and honest arguments." United States v. 100 Cases of Tepee Apples (D. C.) 179 Fed. 987.

In United States v. Johnson, 221 U. S. 488, at page 497, 31 Sup. Ct. 627, at page 628 (55 L. Ed. 823), Mr. Justice Holmes says:

"In further confirmation, it should be noticed that, although the indictment alleges a willful fraud, the shipment is punished by the statute if the article is misbranded, and that the article may be misbranded without any conscious fraud at all."

In District of Columbia v. Lynham, 16 App. D. C. 85, it is said:

"It is no defense for a druggist prosecuted for selling an adulterated drug in violation of the Act of Congress February 17, 1898 (30 Statutes 246), re-

lating to the adulteration of food and drugs in the District of Columbia, to show simply that he was at the time of sale * * * ignorant of the fact that the drug was adulterated, as he must know what he sells, or proposes to sell, and that it conforms to the standard prescribed by law."

In United States v. Five Boxes of Asafœtida (D. C.) 181 Fed. 561, it is said by Judge Holland:

"The article of food or drug adulterated or misbranded is declared to be forfeited as an offending thing which threatens the health of the citizen, and therefore subject to seizure, without regard to the acts or knowledge of the owners or claimants."

For these reasons, the judgment must be reversed, and a new trial granted.