**UNITED STATES of America,
Plaintiff,**

**v.**

**ARTICLES OF DRUG CONSISTING OF the following: THYRODIG TABLETS (OR CAPSULES), Thyrodig Anterior Pituitary Tablets (or Capsules), Thyroid Tablets (or Capsules) 3 gr., 4 gr., 5 gr., etc.,**

**and**

**Western Research Laboratories, Inc., a corporation, and Leonard C. Tobin, Elmer J. Morgenstern, and Vincent Crocker, individuals, Defendants-Claimants.**

**Civ. A. Nos. C–640, C–1191.**

United States District Court
D. Colorado.

Nov. 20, 1969.

---

2. See n. 1, *supra*.

3. That assumption was, no doubt, correct. See Sibron v. New York, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917 (1968).

James L. Treece, U. S. Atty., and Milton C. Branch, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Shivers & Banta, by M. O. Shivers, Jr., and Tom L. Eitel, Englewood, Colo., Winner, Berge, Martin & Clark, by Fred M. Winner, and Johnson & Kidneigh, by

Roger F. Johnson, Denver, Colo., for defendant-claimant, Western Research Laboratories, Inc.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

On November 26, 1968, the plaintiff, United States of America, filed a complaint seeking an injunction against Western Research Laboratories, Inc. and three of its officials, pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 332(a). On January 4, 1968, the plaintiff filed an additional complaint for forfeiture against certain drugs manufactured by Western Research, Inc. *See* 21 U.S.C. § 334(a). These two causes have been consolidated. On November 5, 1969, the parties entered into a consent decree which provided that Western Research and the other defendants would no longer label, promote or sell the drugs in question specifically for the treatment of obesity and that the drugs would bear certain labels informing retail distributors that the drugs were not to be used in the treatment of obesity. One issue, however, has been reserved by the consent decree and has been submitted to this Court in the form of plaintiff's and defendants' motions for summary judgment—namely whether all types of packages originating with defendants, including those destined for consumer care, must bear the labels in question. These motions for summary judgment have been briefed and argued by the parties, and the issue presented now stands submitted for adjudication.

The defendant Western Research, Inc., manufactures, processes, packages, labels and distributes drugs in interstate commerce. Certain of these drugs, which are the subject matter of this action, have been in the past distributed by Western Research for use in the treatment of obesity, and are composed in whole or part of thyroid, digitalis and anterior pituitary. These are prescription drugs which are manufactured and distributed by Western Research to physicians who may not, of course, dispense them without an oral or written prescription. *See* 21 U.S.C. § 353(b) (1).

Defendant Western Research's packaging of the drugs in question includes use of small plastic bags or cellophane or plastic tear strips. Each of these small bags or strips contains 28 tablets or capsules, and on each plastic bag or strip is printed the manufacturer's product identification designation. These plastic containers are then placed in cardboard boxes for sale. The cardboard boxes may contain 1008, 5040 or 10080 tablets or capsules.

Under the Federal Food, Drug, and Cosmetic Act, drugs are deemed to be misbranded if the label on their container fails to include certain specified information. 21 U.S.C. § 352. Both the plaintiff and defendants agree that the tablets and capsules in question are drugs within the statutory definition. 21 U.S.C. § 321(g). The term "label" is defined by the Act as:

> * * * a display of written, printed, or graphic matter *upon the immediate container of any article*; and a requirement made by or under the authority of this chapter that any word, statement, or other information appear on the label shall not be considered to be complied with unless such word, statement, or other information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper. 21 U.S.C. § 321(k) (Emphasis added.)

However, the term "immediate container" does not include "package liners." 21 U.S.C. § 321(*l*).

It is the plaintiff's contention that in the present case the "immediate containers" are the plastic bags or tear strips which contain the 28 tablets or capsules, rather than the cardboard carton, and that these plastic bags or strips do not contain the information required by 21 U.S.C. § 352(b), § 352(e) (1) (A) and § 353(b) (4). Defendants, on the other

**250**

hand, claim that the cardboard box is the "immediate container" within the meaning of the Act,[1] or that even if the individual plastic bags or strips are found to be the "immediate containers," the Act specifically exempts these drugs from the labeling requirements involved in this case. *See* 21 U.S.C. § 353(b) (2).

 Although there is little case law on the issue of what constitutes the "immediate container" or a "package liner" under the Federal Food, Drug, and Cosmetic Act, we feel that Congress clearly intended that the term "immediate container" includes that container in which the drugs will reach the public for consumption. *See* United States v. Article of Drug (BIFLAV—C—2), 292 F.Supp. 346 (C.D.Cal.1968). Thus, in the present case, the placing of the information required by § 502 of the Act, 21 U.S.C. § 352, on the outer cardboard cartons, does not fulfill the letter and spirit requirements of the Act.

Our interpretation of the term "immediate container" is supported by the regulations promulgated by the Secretary pursuant to 21 U.S.C. § 371. The Secretary has defined "label" to mean:

any display of written, printed, or graphic matter on the immediate container of any article, or any such matter affixed to any consumer commodity *or affixed to or appearing upon a package containing any consumer commodity.* 21 C.F.R. § 1.2 (Emphasis added.)

The Secretary has also provided that:

The term "package" means any container or wrapping in which any food, drug, device, or cosmetic is enclosed *for use in delivery or display of such commodities to retail purchasers.* * * 21 C.F.R. § 1.1b (Emphasis added.)

Thus, the Secretary has by virtue of 21 C.F.R. § 1.2 equated "immediate container" with "a package containing any consumer commodity," and has indicated that "package" is a container used "in delivery * * * of such commodities to retail purchasers." *See also* McDermott v. Wisconsin, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913).

We therefore conclude that the plastic bags and tear strips in which the drugs in question reach the retail purchaser are the "immediate containers" and that the information required by 21 U.S.C. § 352 must be contained on them rather than simply on the cardboard cartons in which the drugs are shipped in bulk or quantity to retail distributors. *See also* 21 C.F.R. § 1.1b(a).

 Furthermore, defendants' reliance on the theory that these plastic bags and tear strips are "package liners" and hence need not be labeled is also misplaced. Congress plainly intended to exempt package liners, because in almost every case these would not be the containers received by the ultimate consumer, and hence labeling of them would accomplish no purpose. We interpret the term "package liners" to mean containers of drugs in bulk form, which containers are opened by the retail or wholesale distributor who then repackages the drugs in small containers for distribution to the ultimate retail consumer.[2] The small plastic bags and strips containing 28 capsules each clearly do not fall within this definition.

1. Both parties agree that the information contained on the cardboard cartons is sufficient to meet the Act's requirements if it is found to be the "immediate container" and that the information contained on the individual plastic bags or strips is insufficient to meet the Act's requirements if it is determined that these are the "immediate containers."

2. An example of what constitutes a "package liner" can be found in defendants' alternative form of packaging drugs, which form is not under attack in this case. Under this alternative form of packaging, a large plastic sack containing some 1000 capsules is inserted inside a cardboard box. The large plastic sack is opened by the retail distributor and the drugs contained therein are taken out and repackaged in smaller containers to be distributed to retail purchasers. In such a situation the large plastic sack can reasonably be considered a "package liner."

█ Defendants' second contention is that the drugs in question are exempt from the labeling requirements allegedly violated by virtue of 21 U.S.C. § 353(b)(2), which provides:

Any drug dispensed by filling or refilling a written or oral prescription of a practitioner licensed by law to administer such drug shall be exempt from the requirements of section 352 of this title, except subsections (a), (i) (2) and (3), (k), and (1) of said section and the packaging requirements of subsections (g) and (h) of said section, if the drug bears a label containing the name and address of the dispenser, the serial number and date of the prescription or of its filling, the name of the prescriber, and, if stated in the prescription, the name of the patient, and the directions for use and cautionary statements, if any, contained in such prescription.

Defendants' claim that the above quoted section exempts all prescription drugs, which the drugs in question admittedly are, from most of the requirements of 21 U.S.C. § 352 from the time such drugs are manufactured until the time they reach the consumer. We disagree with this sweeping interpretation of this exemption. As we view it, the exemption is inapplicable to a situation such as the present one in which the drug is packaged by the manufacturer for distribution to the consumer.

Section 353(b)(2) *supra*, lays down a number of requirements which the doctor or pharmacist must fulfill in distributing prescription drugs to the consumer in cases in which the exemption does apply. As we view it, the thrust of this provision is a restatement of the exemption provided for in 21 U.S.C. § 321(*l*) which declares that "package liners" are not "immediate containers." Where the drugs are shipped to the physician or pharmacist in package liners, it becomes necessary for § 353(b)(2) to take hold, and the positive requirements of that Section become a practical necessity. Thus,

the physician or pharmacist is the only one who can furnish the label. Where, as here, however, the packages are manufactured for distribution to the consumer and are "immediate containers" within the statute, labeling at the manufacturer level is not dispensed with and should not be. Such labeling is a practical necessity for the protection of the consumer.

█ In construing an act with broad remedial purposes, a court should give a liberal interpretation to protective provisions while narrowly interpreting exceptions from such provisions. *See, e. g.*, United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). We believe that the requirements of 21 U.S.C. § 352 were designed not only to provide information for the ultimate consumer, but also to prevent confusion of drugs while in the hands of wholesale or retail distributors. Many drugs are packaged in the same way as the drugs here in question and are of substantially similar appearance. Only by requiring each plastic bag or tear strip sheet to be labeled can the risk of confusion be minimized.

We note that the only case which deals with the issue of the scope of the prescription drug exemption has also held that this exclusion is not applicable to the manufacturer who packages drugs in small plastic bags which are ultimately passed on to the consumer. United States v. Article of Drug (BIFLAV—C—2), 292 F.Supp. 346 (C.D.Cal.1968).

In conclusion, we express no opinion at this time as to the scope of the exemption contained in 21 U.S.C. § 353(b)(2) or as to the extent of its application for the benefit of the physician or pharmacist who distributes drugs without repackaging them. We merely hold that in no circumstances does this exemption apply to the manufacturer of the drugs where the drugs reach the consumer in the same package as that provided by the manufacturer.

For the reasons set forth above, plaintiff's motion for summary judgment

should be and is hereby granted. Defendants' motion for summary judgment should be and the same is hereby denied.

Counsel for the Government will submit a supplemental formal decree covering the present determination.